EDWIN DRAPER *et al.*, Defendants in Error, *Ex parte petition*, *v.* SAMUEL O. MINOR *et al.*, Plaintiffs in Error.

*Conveyances—Uses and Trusts—Trustees.*—In consideration of the payment of the sum of $500, M. conveyed land to nine persons as trustees of the Methodist Episcopal Church South, and to them and their successors in office lawfully appointed forever; one of the grantees died, and another removed from the State; *held*, that the Circuit Court had no authority to fill the vacancies and appoint new trustees under the act. (R. C. 1855, p. 1554, § 1.) *Held, further*, that if the consideration was paid by the persons constituting the church, that a court of equity would, upon the application of the church, fill the vacancies existing by appointing as trustees such persons as the church might select; but if the money was paid by the grantees, that then the legal title would belong to them and no appointment was needed.

*Error to Louisiana Court of Common Pleas.*

*S. S. Allen*, for plaintiffs in error.

I. The church, by means of its preacher in charge and Quarterly Conference, had full and ample power to fill vacancies in its board of trustees. (See "Doctrines and Discipline of the Methodist Episcopal Church," p. 254.)

II. Over the church, as such, the temporal courts of this country most clearly have no jurisdiction, except to protect them and to protect the civil rights of others, and to preserve the public peace, none of which were necessary in this case. (See Baptist Church in Hartford v. Withnell, 3 Paige, ch. 301; Sawyer v. Cipperly, 7 Paige, 281; Ang. on Corp. § 58, note 1, 29; Stebbens v. Jennings, 10 Pick. 172; Gable v. Miller, *id.* 10 Pick. 627.)

III. There were no vacancies in the board when the court below acted, said vacancies having been duly filled by the preacher and Conference long before the court acted. (See "Minutes of the Conference.")

*Dyer & Campbell*, for defendants in error.

LOVELACE, Judge, delivered the opinion of the court.

The petitioners filed an *ex parte* petition in the Louisiana

Court of Common Pleas, at the July term of said court, 1863, setting forth that on the 11th day of June, 1853, Edward G. McQuie and wife, by their deed of that date, conveyed to petitioners, to wit, Edwin Draper, John S. Markley, John W. Allen, Samuel O. Minor, John Schurmur, Jos. Charleville, Ivey Zumalt, David Watson, and Thomas T. Stokes, certain real estate in the city of Louisiana, in Pike county, Missouri, describing the land fully. That the deed to said tract of land was made for and in consideration of the sum of five hundred dollars, paid by them to said McQuie, and that said conveyance was made to them as trustees of the Methodist Episcopal Church South, for the station of Louisiana, in said county, and to their successors lawfully appointed forever. The petition then sets out the improvements made on the land, and the purposes for which they were made. The petition then goes on to state that in 1859, David Watson, one of the grantees in said deed, departed this life without having conveyed the legal title vested in him to his successor; and that in 1861, Thomas T. Stokes ceased to be a member of said church by withdrawing from the same, and that he has also left the State of Missouri, without having conveyed his interest or legal title to a successor. The petition then closes by asking to have successors appointed in place of Watson and Stokes, and that the legal title of Watson and Stokes be decreed in their successors thus appointed, &c.

Upon this petition the court appointed, Charles Hunter to fill the place of David Watson, and Robert S. Strauther to fill the place of Thomas T. Stokes.

And afterwards, but during the same term of the court, Samuel O. Minor, John W. Allen, Ivey Zumalt, William A. Gun, and Samuel S. Allen, filed a petition asking the court to vacate the order appointing Hunter and Strauther, and set out the following facts, among others, why the order ought to be vacated. They admit the death of Watson, and that a vacancy was thereby created; but they say that on the 21st day of January, 1861, and after the death of said Watson,

the Rev. William H. Newland, who was the preacher in charge of said church at Louisiana station, at a Quarterly Conference then being held in said city, did nominate one of the last mentioned petitioners, William A. Gun, to fill the vacancy in said board created by the death of Watson, subject to the confirmation or rejection of said Quarterly Conference, according to the rules, laws and discipline of the said Methodist Church South, in such cases made and provided; and that thereupon the Quarterly Conference confirmed the nomination of said Gun, and that said Gun accepted said appointment, and became a member of said board of trustees; and that no vacancy exists on account of the death of said Watson.

And with regard to the vacancy occasioned by the withdrawal from the church and removal from the State of said Stokes, they state that Samuel S. Allen, another of said petitioners, was regularly appointed, according to the rules of said church, on the 23d day of April, 1862. They therefore insist that no vacancy existed in the board at the time Hunter and Strauther were appointed, and that the order appointing them ought to be vacated.

They further aver that the names of John W. Allen, Samuel O. Minor, and Ivey Zumalt, were used in the original petition without their knowledge or consent, and insist that the order ought to be vacated for that reason.

The court refused to vacate the order appointing Hunter and Strauther, and the last mentioned petitioners excepted, and bring the cause here by writ of error.

The case is not free from difficulties. The court below seemed to be acting under the statute concerning " Trusts and Trustees." But this case does not fall within the statute, for that only provides for appointing trustees in deeds of trust made to secure the payment of a debt or other liability. (R. C. 1855, p. 1554, § 1.) So in this case, it would seem that the parties must resort to their equitable remedy to prevent the trust from being defeated for want of a trustee.

There are more informalities that appear upon the record,

but they are not alluded to by either party. The question presented by the parties is, whether there are vacancies in the board of trustees to be filled. Both parties admit that there have been vacancies, but the defendants contend that the vacancies have been filled by the church according to the rules and discipline of that church, and the evidence proves conclusively that the board of trustees for church purposes, under the rules and discipline of the church, had been filled; but whether, under the peculiarities of this deed, the legal title to the property described in the deed will descend to the trustees thus appointed seems doubtful. The uses and purposes for which the property is to be used is not expressed in the deed, but the property is merely deeded to the petitioners, naming them, together with Watson and Stokes, describing them as " Trustees of the Methodist Episcopal Church South," and to them and their successors in office, lawfully appointed, forever, for a consideration of five hundred dollars. It is not stated, except as mentioned in the deed, though it may perhaps be inferred, that the petitioners at the time of the conveyance were in fact trustees of the church, appointed by the church under its rules and discipline; nor does it appear who furnished the money to purchase the property. If it was furnished by the church, then most certainly the court, upon proper application, would order these plaintiffs to convey it to such person or persons as the church might name, to hold it for their use and benefit; but if, on the contrary, the money was furnished by these plaintiffs, the naked fact that the grantors in the deed have described them as " Trustees of the Methodist Episcopal Church South" would not of itself operate to destroy their interest in the property. In the former case they would hold the property in trust for the church, and would be compelled to convey to any persons the church might nominate to receive it; but this could only be done upon proof of the fact that the church furnished the money with which the property was purchased. Upon the face of this deed, the property belongs to the grantees in the deed;

and to divest them of title, it must be shown *aliunde* that the purchase money was furnished by the church. The legal title is in the grantees; but in case somebody else furnished the purchase money, then the grantees will be regarded as holding the property in trust for whomsoever furnished the purchase money.

If, then, the above views be correct, there can be no question of vacancy in the board of trustees as respects this property, until the question of the title is first settled. If it belongs to the grantees, no trustees are necessary; they can manage it for themselves. If the church is entitled to it, then the grantees must first be divested of their title, and the title vested in some person or persons for the use of the church.

The proceedings here are irregular and premature. The judgment must be reversed and the cause dismissed. The other judges concur.